May it please the Court, Elizabeth Daly on behalf of the Defendant, Leon Ireland, and with the Court's permission, I'll reserve just two of my minutes for rebuttal. This appeal asks the Court to resolve two issues regarding the correct interpretation of Section 922N, which makes it a federal crime to receive a firearm while under indictment for a crime punishable by imprisonment for a term exceeding one year. First, a defendant who has received a conditional discharge in Oregon is no longer under indictment with the meaning, within the meaning of 922N. So how do you distinguish our opinion in United States v. Hickey, where we held that an original indictment remains extant even after a superseding indictment? The statutory text in 922N requires that the defendant remain under indictment, not simply that the indictment not have been formally dismissed or extinguished. What the Supreme Court said in Dickerson is that the identical, which we submitted to the Court by a 28J letter, is that an identical deferral proceeding was equivalent to a conviction. In Dickerson, the Supreme Court considered the Iowa deferral statute, under which, just like in Oregon, a defendant would plead guilty, the Court would place that person on probation, and only after the period of probation would the Court enter a formal judgment or a formal judgment either of dismissal or of a conviction. In that case, the Supreme Court said, just as we're saying here, that the guilty plea is final, that it irrevocably extinguishes the trial rights, it determines the matter of guilt, and that it— So if the indictment expired when the state court entered an order of conditional discharge, what would be the jurisdictional basis for the state court subsequently entering a judgment of dismissal or guilt? The statute in 922N doesn't focus on whether the indictment is extant or whether there's jurisdiction in the district court. It questions whether the person is under indictment, which is defined in the statute as requiring a prospective import, a document under which the defendant may be prosecuted. And it's that future import that the Supreme Court in Dickerson and the district court in Hartsfield before that said doesn't exist anymore under this unique ameliorative type of deferral provision. The 1980— Sorry. No, go ahead. The 1986 amendments to the statutory scheme, I think, solidify that it was Congress's intent to exempt conditional discharge-like ameliorative state provisions from the definition of the firearms provisions, because before those amendments, that status was a conviction. After those amendments, Congress said, we want to recognize state leniency in this deferrals and expungements, because it's the state that will now define what is a conviction. No, except your approach sort of comes with no good deed goes unpunished, because when you want to, as a prosecutor, give someone an opportunity, you know, you give them a chance. If you don't get in any trouble during this, then it ends up being dismissed. Part of the reason they don't get in any trouble is you got something hanging over their head, and if they get in trouble, it doesn't go away, right? It's still hanging over their head. Yes, just as in the situation where a person is convicted and placed on probation. The conditional discharge is an ameliorative statute that does not continue the prosecution of guilt. It ends the prosecution of guilt and leaves only probation-like conditions that Dickerson is just equivalent to a conviction. So do you agree that Mr. Ireland was charged with a Class C felony under Oregon law, and Do you agree with that? I agree with that. Okay, so then why then are we not bound by our opinion in United States v. Murillo, and that, to reject your argument that we may look to the actual sentence a defendant faces rather than the statutory maximum? The statutory maximum for a Class C felony does not define the statutory maximum for the offense of unlawful possession of a controlled substance in Oregon, and the Oregon courts have explicitly told us that this is true. They've said the statutory maximum sentence is the presumptive sentence under the applicable grid block. What I want to focus on... At what point in time did the potential sentence get to be so limited? I mean, because I'm not particularly familiar with the Oregon system, was there ever a time when your client was subject to a heavier punishment than what the Oregon grid system produces? I believe the legislative history would show that after the Apprendi and Blakely rulings, that the Oregon legislature changed the statutes so that judges, so that more formal procedures were required before an aggravated or mitigated sentence could be imposed, before a departure sentence could be imposed. Before that time, the departures were subject to a finding, but the same procedures requiring advance notice and proof beyond a reasonable doubt of aggravating factors didn't exist before Blakely. Now those procedures, just like a charge of a crime itself, are required to be put into the charging document or, in some circumstances, notified to the defendant within a certain time of the indictment. They must be proved beyond a reasonable doubt, and there's no permission for an aggravated sentence without proof beyond a reasonable doubt, a finding on the record. So your position is from, I take it, the filing of, well, was it from the indictment or whatever charging document was used in Oregon from that moment on, unless it was amended, the maximum potential punishment for your client was limited to, I've now forgotten what, but it wasn't five years. In this case, that's correct, because no matter what aggravating factors were even noticed by the government, the maximum sentence would be 12 months, even if a so-called double-barrel departure for proven aggravating factors existed. On the record itself, with no aggravating factors, the maximum sentence was 30 days in jail. Aggravating factors that could lead to 12 months could have come up later. What would it have taken to go from 12 months to something higher? We can't have that in this case because the plea of guilty has already been entered and the defendant's grid block has been defined as criminal history grid block I and offense serious level I, which is the lowest it gets on the scale. And that criminal seriousness level of I is defined by the legislature in a statute. It says, for unlawful possession of a controlled substance, the criminal category shall be I. And it distinguishes, for example, substantial quantity possession, which in Oregon is the same unlawful possession statute, but it requires that the charging document allege additional quantities of drugs. And in that case, the statute says the crime category shall be VI. Before I run into my rebuttal time, I want to point out that the government's only position here is that Karachuri-Rosendo and Moncrief are irrelevant. But I would say that Karachuri-Rosendo itself, the Supreme Court vacated the judgments of the Fourth Circuit in Simmons and vacated the judgment of the Tenth Circuit, I'm sorry, the Eighth Circuit in Halterwanger, and asked those circuits to reconsider that precedent in light of Karachuri-Rosendo. So I think we can infer that the Supreme Court itself at least considered that Karachuri-Rosendo would be relevant to the question of what term of imprisonment is a state crime punishable by when the guidelines prescribe a mandatory sentencing range. All right. Do you want to save the balance for rebuttal? Thank you. Thank you. Good morning. Good morning. May it please the Court. Pam Posso for the United States. Do you maybe want to start with the response to what Mr. Ireland's contention that Karachuri-Rosendo and Moncrief-Halter undermine our opinion in Morello? Do you want to start with that since we just sort of left off there? Certainly. Our position is that Morello controls. There hasn't been, it hasn't been abrogated, it hasn't been overruled. And I think that Karachuri and Moncrief, since those are the two cases in defendant's brief, can be distinguished. One, they're both categorical approach analysis of state offenses as related to immigration. So I think you're looking at two different things. How does that really change things? Because the categorical approach is used not just in the immigration context, but in this context. I think in this case we're talking about a statute, the Oregon possession of a controlled substance where on its face the maximum is stated as five years. These cases, and some of the progeny that have followed, spent a lot of time discussing if a case has aggregating factors and also what it takes to, I think the discussion in Simmons is actually instructive. If there's a convoluted sentencing scheme, there's issues related to notice as well. That is, if there's a somewhat, again, convoluted sentencing scheme, you want the defendant to have notice of what the potential sentencing can be, and if there's additions and subtractions based on prior behavior. I think that's something that's completely separate than what we're looking at here. It kind of rejected the use of a hypothetical federal prosecution, noting first that the circumstances of Karachuri's prosecution were not identical to those hypothesized by the government, and second, that the government's position failed to give effect to the mandatory notice and process requirements of federal law, which bars a simple possession charge from being a felony unless the federal prosecutor first elects to charge a defendant as a recidivist. So didn't it sort of say that it was a hypothetical, hypothetical, hypothetical, and that's what was the problem with that? Absolutely, and something specific to Karachuri, too, is you're looking at a Texas law where you're taking two misdemeanors and trying to combine them to make a felony. In this case, we're starting with a Class C felony. I mean, it's clear in the plea petition that what the statutory max is. I mean, there's no question that it's a felony, and if we look at, again, I think Murillo controls. Also, just I'd like to point out that Judge Clifton noted in U.S. v. Albino Lee, and he was referencing Moncrief in that case, but he was talking about how it's limited to, and in that case, it was sentencing enhancement. Looking at Karachuri or Moncrief, those are specific to immigration cases, and that's separate than what we're talking about here with a criminal case and the criminal statute. Let me ask you, because I'm not familiar with the Oregon system, do you have any different view on what I heard from defense counsel as to how the Oregon system works? In terms of maximum punishment? Well, punishable. I mean, one of the problems, and welcome to the categorical approach, one of the problems is we're taking a categorical approach and applying it to the statutes of different states. And so federal statutes and the statutes of most states that I am more familiar with set potential maximum sentences pretty high, even though the reality is that actually imposed sentences don't reach the 10-year or 20-year or whatever year level. But you could devise a system differently. And what I seem to be hearing is that Oregon has devised a system where they stake out a potential maximum but join it with a statute that says, but you can get to that point only if these other things are established as well, which is where the analogy to, and I'm going to butcher the pronunciation, Karachuri-Rosando comes in, because in that case you did not have, excuse me, a charging document that made reference to the prior conviction that would have been necessary to reach the higher level. I'm not saying it's a perfect analogy, but I'm trying to figure out how the Oregon system works in order to see how great the difference is. So I really come back to the question, is my understanding based on what I've heard this morning of the Oregon system correct or am I missing something? And I should say my impression is that the charging document that was lodged against defendant here was not one that would actually have permitted a sentence of five years but would have permitted a sentence of no more than 12 months. Is that true? I would say that's generally correct. And I think that the distinction that I would make in talking about the statutory ceiling versus the grid system is one of administrative and regulatory versus statutory. Your statutory limit, which again, our argument is still law under Murillo, is something set by the legislature. There's a separate body, a regulatory commission that could change at any time what that grid is going to be. Is the grid itself a function of statute? That is, maybe not the particular numbers, but is the grid itself something that statute has created? The statute created the commission and so the commission creates the grid. And so it's something that could change at any time. And so we look at the ceiling in this case. The statutory maximum is something that controls. And if there are no other questions, for the reasons articulated in the government's brief, the judgment should be affirmed. Thank you. I'll start where we left off with that last point. The Oregon guidelines are required by statute to be promulgated by the commission, but they're legislatively adopted. They're promulgated by the Oregon Criminal Law Commission, then they have to be submitted to the legislature and they don't become law until the legislature adopts them by a law. So they're statutory. So the 12-month level, for example, is that something that the legislature has adopted or is stamped as approved and without that, you don't have a 12-month maximum? Absolutely. That's clear in this case and in the sentence in the district court's decision, it said we agree that the maximum available sentence for Mr. Ireland's offense was only six months. That's a legislatively approved statutory maximum. And the Oregon State Supreme Court, the highest court, has said the presumptive range is the statutory maximum sentence and they used that phrase, statutory maximum sentence. We should interpret the federal laws here to give deference to how the state has chosen to define its offense. And this is not unusual because the courts dealt with it frequently in relation to other state statutes, sentencing provisions that differ depending on different contexts, like the California wobbler regime, where a sentence might be punishable as a felony or it might be punishable only as a misdemeanor, but we don't know until the actual sentence is imposed. So this is not unusual. What we're looking at is what is the maximum available sentence and here it was definitely no more than 12 months. Before I completely run out of time. One of the things, I'll give you a few seconds by asking you a question, one of the things that gives me pause here is, it has been, what, 12 or 13 years since Murillo and it the Oregon scheme has been in place for all of that time and if other states may have similar schemes, the issue hasn't come up as to whether at least since Karachuri, which was I think like 2010, has Murillo been superseded? It seems odd for eight years to pass before that question's even teed up. How come? Well, the, there have been unpublished dispositions from this panel that have said Murillo is not overruled, but the court has never issued a published decision to that effect and if it did so here, it would create a circuit split that doesn't already exist. In the eight years since Karachuri-Resendo, every circuit to have addressed this issue in a published opinion has held that Karachuri-Resendo abrogated that circuit's precedent, which was Murillo-like and in some cases, like the Tenth Circuit's Hill precedent, it actually relied on Murillo and the Tenth Circuit in Brooks in 2014 said, we agree with the Fourth Circuit and we agree with the Eighth Circuit that Karachuri-Resendo tells us that we can't look to the hypothetical statutory maximum for a non-charged offense. The offense here is unlawful possession of a controlled substance and the Oregon legislature tells us what the maximum sentence for that is. All right. Thank you for your argument. Thank you. All right. This matter stands submitted. The next matter on calendar for argument is United States of America v. Johnny Ellery Smith.
judges: Fisher, Clifton, Callahan